**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

La Em,

    Petitioner,

v.

Matthew Whitaker, et al.,

    Respondents.

No. CV-18-04279-PHX-DWL (JZB)

**ORDER**

Petitioner La Em, who is detained in the CoreCivic Central Arizona Florence Correctional Complex in Florence, Arizona,[1] has filed, through counsel, an Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 13) and an Amended Motion for Preliminary Injunction (Doc. 14). As explained below, the Amended Motion will be denied in part (to the extent it seeks removal-related relief) and Respondents will be called to answer the Amended Petition, and respond to the Amended Motion, as to Petitioner's remaining detention-related claims.

**I.    Background**

Petitioner is a native and citizen of Thailand, born to Cambodian parents in a Thai refugee camp. (Doc. 9-2 at 2-3.) On August 10, 1984, Petitioner was admitted to the United States as a refugee in Seattle, Washington. (Docs. 9-2 at 2-3; 1-3; 9-2 at 5-7.) His status was adjusted to that of a lawful permanent resident on December 17, 1987. (Docs.

---

[1] Formerly the Corrections Corporation of America (CCA) Florence Correctional Center and Central Arizona Correctional Center (or Central Arizona Detention Center).

1-3; 9-2 at 5-7.) On June 11, 2002, Petitioner was convicted in the Pima County Superior Court, Case No. CR-2002-0741, of three counts of child abuse in violation of Ariz. Rev. Stat. § 13-3623(A)(2) and sentenced to five years' imprisonment. (Docs. 1-2 at 15-19; 1-3; 9-2 at 9-12.)

On December 15, 2005, Petitioner was detained in the custody of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), and was issued a Notice to Appear (NTA) the following day. (Docs. 1-3; 9-2 at 5-7, 16-17.) The NTA charged Petitioner as removable from the United States as an admitted alien who had been convicted of an aggravated felony. (Doc. 1-3.) Petitioner conceded the charge of removability and, on January 3, 2006, an immigration judge ordered him removed to Cambodia, or in the alternative, to Thailand. Petitioner waived appeal. (Doc. 9-2 at 19-20.) On April 4, 2006, the Office of Detention and Removal Operations (DRO) Phoenix Field Office Director issued a Release Notification and Decision of Post Order Custody Review (Doc. 9-2 at 22-23) advising Petitioner that he would be released from custody under an Order of Supervision "pending [his] removal from the United States." (Docs. 1-2 at 3; 9-2 at 22-23.)

On October 6, 2017, DHS sent Petitioner a Call-In Letter requesting that he appear at the United States Citizenship and Immigration Services (USCIS) Field Office in Tucson, Arizona for an interview on October 16, 2017. (Doc. 9-2 at 25.)

On September 12, 2018, Petitioner was apprehended at work and taken into custody by the Tucson Enforcement and Removal Office (ERO) Fugitive Operations Team. (Docs. 13 ¶ 40; 1-2 at 13; 9-2 at 27-28.) The same day, ERO issued a Notice of Revocation of Release (Doc. 9-2 at 30-31) advising Petitioner, pursuant to 8 C.F.R. § 241.13(i)(3), that "on account of changed circumstances," ICE had "determined that there is a significant likelihood of removal in the reasonably foreseeable future in [his] case," and that he would "remain in ICE custody at this time."

On October 12, 2018, Petitioner was served with a Notice to Alien of File Custody Review (Doc. 1-2 at 11) notifying him that ICE would conduct a review of his custody

status on December 11, 2018. A temporary travel document was issued by the Cambodian government on October 25, 2018 (Doc. 9-2 at 33), and Petitioner was advised by detention officials that he would be deported by Christmas 2018 (Doc. 13 ¶ 5).

On November 21, 2018, Petitioner, through counsel, filed a motion with the Florence Immigration Court to stay his removal and reopen his removal proceedings, arguing that under intervening case law, his conviction did not qualify as a crime of violence and he is no longer removable as a matter of law. (Doc. 1-2 at 2-8.)

On November 30, 2018, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) and Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2) with this Court. The Motion asked the Court to "enjoin Respondents from detaining or removing him unless and until the immigration court has adjudicated his motion to reopen removal proceedings." (Doc. 2 at 3.)

On December 4, 2018, the Court granted a temporary stay of removal pending a hearing on the Motion, called Respondents to respond to the Motion and answer the Petition, and authorized Petitioner to file a reply. (Doc. 6.) The Court also scheduled a hearing on the Motion for December 18, 2018. (*Id.*)

On December 11, 2018, Respondents filed their response. (Doc. 9.) In this pleading, Respondents advised the Court that on December 3, 2018, the immigration court had granted Petitioner's request for a stay of removal "while the court considers [his] motion to reopen." (Doc. 9-2 at 35.) Respondents further argued that (1) under the REAL ID Act of 2005, "[t]his Court lacks jurisdiction to enjoin Petitioner's removal," and (2) the immigration court's issuance of a stay meant that "Petitioner's request to stay his removal is moot." (Doc. 9 at 3-5.)

On December 12, 2018, Petitioner requested a one-day continuance of the hearing on the Motion. (Doc. 10.) The Court granted this request and specifically encouraged Petitioner, in his reply, to address the mootness issue. (Doc. 11.)

Petitioner did not file a reply. Instead, on December 14, 2018, Petitioner filed an Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 13) and an

Amended Motion for Preliminary Injunction (Doc. 14). As a result, the Court vacated the hearing on the Motion. (Doc. 16.)

**II. Amended Petition**

In his Amended Petition, Petitioner names United States Acting Attorney General Matthew Whitaker, DHS Secretary Kirstjen Nielsen, ICE Deputy Director and Acting Director Ronald Vitiello, and ICE Phoenix Field Office Director Enrique Lucero as Respondents.[2] The Amended Petition asserts three grounds for relief.

In Ground One, Petitioner claims that removal before the adjudication of his motion to reopen would violate his statutory rights under the INA. In Ground Two, Petitioner claims that removal before the adjudication of his motion to reopen would deprive him of his procedural due process rights under the Fifth Amendment. In Ground Three, Petitioner claims that the revocation of his release and his continued detention without an individualized determination whether his detention is justified is "unlawful." Petitioner further claims that he has been detained in excess of six months under INA § 241(a), 8 U.S.C. § 1231(a), and is entitled to a custody redetermination hearing before an immigration judge under *Diouf v. Napolitano* (*Diouf II*), 634 F.3d 1081 (9th Cir. 2011).

In his demand for relief, Petitioner asks the Court: (1) to stay his removal "until such time as the immigration court and/or the Board of Immigration Appeals ('BIA') adjudicates the motion [to reopen], and the Petitioner has had the opportunity to file a petition for review and seek a stay with the Court of Appeals;" (2) to enjoin his continued detention and order his release from custody absent an individualized determination by an impartial adjudicator that his detention is justified and cannot be sufficiently addressed by alternative conditions of release and/or supervision; (3) to enjoin Respondents from transferring him

---

[2] Under the rationale articulated in *Armentero, infra*, and in the absence of authority addressing whether the proper respondent in immigration habeas proceedings under § 2241 is the Attorney General, the DHS Secretary, or the ICE Field Office Director, the Court will not dismiss these Respondents or the Petition for failure to name a proper respondent at this stage of the proceedings. *See Armentero v. INS*, 340 F.3d 1058, 1071-73 (9th Cir. 2003) (finding the DHS Secretary and the Attorney General were proper respondents), withdrawn, 382 F.3d 1153 (9th Cir. 2004) (order); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 435 n.8 (2004) (declining to resolve whether the Attorney General is a proper respondent in an immigration habeas petition).

outside the jurisdiction of Arizona; and (4) to declare that his detention violates the Due Process Clause, the INA, and the Administrative Procedures Act.

## III. Habeas Corpus Review

A district court may summarily dismiss a habeas corpus petition "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, foll. 28 U.S.C. § 2254.[3] *See also Clayton v. Biter*, 868 F.3d 840, 845 (9th Cir. 2017) ("District courts adjudicating habeas petitions … are instructed to summarily dismiss claims that are clearly not cognizable."); *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face"); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983) (Rule 4 "explicitly allows a district court to dismiss summarily the petition on the merits when no claim for relief is stated").

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where a petitioner is "in custody under or by color of the authority of the United States … in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). "The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention." *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012)*. See also Munaf v. Geren*, 553 U.S. 674, 693 (2008); *Allen v. McCurry*, 449 U.S. 90, 98 n.12 (1980). However, habeas corpus review is not available for claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," 8 U.S.C. § 1252(g), "arising from any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), or "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding [an alien's] detention or release," *Demore v. Kim*, 538 U.S. 510, 516 (2003) (discussing 8 U.S.C. § 1226(e)). But, "the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or

---

[3] The Rules Governing Section 2254 Cases in the United States District Courts apply to habeas proceedings under § 2241. *See* Rule 1(b), foll. 28 U.S.C. § 2254.

- 5 -

'decision.'" *Jennings v. Rodriguez*, ___ U.S. ___, 138 S. Ct. 830, 841 (2018). *See also Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008). Thus, "challenges to the statutory framework that permits the alien's detention without bail," *Jennings*, 138 S. Ct. at 841, "questions of law" raised in the application or interpretation of detention statutes, *Leonardo v. Crawford,* 646 F.3d 1157, 1160 (9th Cir. 2011), and "claims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241,'" *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002)).

**IV. Analysis**

    **A. Grounds One and Two**

In Grounds One and Two of the Amended Petition, Petitioner argues that, as a matter of both statutory and constitutional law, Respondents shouldn't be allowed to remove him before the final adjudication of his motion to reopen.

The Court concludes that it lacks jurisdiction to entertain these claims for three reasons. First, the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(5), which was enacted in 2005 as part of the REAL ID Act. Section 1252(a)(5) provides, in relevant part, that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter . . . . [T]he terms 'judicial review' and 'jurisdiction to review' include habeas corpus review." This provision encompasses "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States." *See* 8 U.S.C. § 1252(b)(9). In short, the REAL ID Act "makes the circuit courts the 'sole' judicial body able to review challenges to final orders of deportation, exclusion, or removal." *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005); *see also Mamigonian v. Biggs*, 710 F.3d 936, 941 (9th Cir. 2013) ("[T]he REAL ID Act precludes aliens . . . from seeking habeas relief over final orders of removal in district courts.").

Here, although Petitioner argues the REAL ID Act is inapplicable because he isn't "directly challeng[ing]" his order of removal, and instead is merely "assert[ing] a due process right challenge the order in an appropriate court" (Doc. 14 at 8 n.1),[4] multiple courts have concluded that habeas petitioners shouldn't be permitted to sidestep the REAL ID Act through such artful repackaging of their claims. At bottom, the claims and theories asserted in Grounds One and Two of the Amended Petition "aris[e] from any action taken or proceeding brought to remove an alien from the United States." *See* 8 U.S.C. § 1252(b)(9). As a result, the Court lacks jurisdiction to consider them. *See, e.g., Ma v. Holder*, 860 F. Supp. 2d 1048, 1050, 1060-62 (N.D. Cal. 2012) (dismissing habeas petition, where petitioner sought "a stay of deportation during the BIA's adjudication of her motion to reopen," and concluding that "no matter how Petitioner frames the argument in this case, the petition is one that seeks to halt a final order of removal. Such relief strips this Court of jurisdiction—barring it from exercising judicial review of the habeas petition."); *Rosales v. Aitken*, 2011 WL 4412654, *3 (N.D. Cal. 2011) ("In this case, Petitioner seeks an order staying his removal and directing Respondents to adjudicate the motion to reopen. It is clear, regardless of how Petitioner frames this motion, that Petitioner seeks to 'halt the execution of the final orders of removal' arising from a proceeding brought in connection with Petitioner's removal, and therefore this Court lacks jurisdiction over this case. While this Court recognizes that it may have jurisdiction to hear petitions arising out of proceedings other than removal proceedings, it finds that here, Plaintiff clearly seeks this Court to review a final order for removal, which it may not do.").

Second, the Court also lacks jurisdiction under 8 U.S.C. § 1252(g), which was enacted in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility

---

[4] Petitioner similarly asserts, in his Amended Petition, that "[t]his action is not barred by . . . the REAL ID Act of 2005 . . . [because it] does not challenge the underlying order of removal. Rather, it seeks to challenge a condition of Petitioner's custody, specifically ICE's abrupt change in policy regarding removal of individuals born in Thai refugee camps to Cambodia, and the unfairly compressed timetable in which Petitioner has been detained and faced with imminent removal. This change in status and timetable are preventing Petitioner from exercising his due process right to challenge his final order of removal in the proper forum: The Immigration Court." (Doc. 13 at 6-7.)

Act ("IIRIRA"). Section 1252(g) provides, in relevant part, that "[e]xcept as provided in this section . . . , no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." Once again, although Petitioner seeks to evade this provision by characterizing his claims as statutory and constitutional challenges to Respondents' policies, the questions presented in Grounds One and Two of the Amended Petition fundamentally arise from Respondents' decision to execute Petitioner's removal order. As a result, these claims are barred from review under 8 U.S.C. § 1252(g). *See, e.g., Ma*, 860 F. Supp. 2d at 1056-60 ("[R]equesting a stay of the execution of the BIA's removal order . . . falls within the ambit of section 1252(g) . . . [because it] is connected 'directly and immediately' to a 'decision or action' by the Attorney General to execute a removal order. . . . Section 1252(g) provides a vice-like grip on the outcome of this case.").[5] *See also Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) (suggesting that an alien's "claim that the Attorney General should have exercised discretion to delay his removal" would be barred by § 1252(g)); *Garcia-Herrera v. Asher*, 585 Fed. Appx. 439, 440 (9th Cir. 2014) ("Garcia-Herrera argues that . . . he is not challenging the merits of the underlying removal order. Rather, he challenges ICE's decision not to delay his removal pending the adjudication of his application for relief under DACA. However, by his own formulation, this constitutes a challenge to ICE's decision to execute a removal order. Therefore, the district court properly dismissed his habeas petition for lack of jurisdiction under 8 U.S.C. § 1252(g)."). These claims are not independent of, or collateral to, Respondents' decision to execute the removal order. *Cf. United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (§ 1252(g) does not bar consideration of "a purely legal question that does not challenge the Attorney General's

---

[5] Petitioner has identified one case, *Chhoeun v. Marin*, 306 F. Supp. 3d 1147 (C.D. Cal. 2018), in which a district court concluded that sections 1252(a)(5), (b)(9), and (g) didn't prevent it from resolving due process-related claims of the sort Petitioner seeks to raise here. The Court respectfully declines to follow *Chhouen* on this point.

discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General will later exercise discretionary authority").

Third, the Court also lacks subject matter jurisdiction over Grounds One and Two for an additional reason. Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. *See* U.S. Const., Art. III, Section 2, Clause 1. "[O]ne of the controlling elements in the definition of a case or controversy under Article III is standing. The requisite elements of Article III standing are well established: A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 598 (2007) (citations and internal quotation marks omitted). Put another way, "[t]he plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (citations and internal quotation marks omitted). When—as in this case—a party seeks to satisfy the injury-in-fact prong of the standing test by demonstrating a risk of future injury, the "'threatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury are not sufficient.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted) (emphases in original).

Here, although Petitioner asserted in his original pleadings that he faced an immediate threat of removal absent relief from this Court (*see* Doc. 2), the immigration court issued an order on December 3, 2018, granting Petitioner's motion for a stay of removal pending the adjudication of his motion to reopen (*see* Doc. 9 at 2; Doc. 9-2 at 35.) This development means that Petitioner no longer faces a sufficiently concrete risk of future injury to have standing under Article III to seek removal-related relief. Although Petitioner speculates that, absent action by this Court, he still faces a theoretical risk of future removal "in the time between any adverse ruling by the immigration court and his own attempt to file an appeal to the agency's appellate body" (Doc. 14 at 8), this is too

conjectural and hypothetical to suffice. If the motion to reopen is granted, Petitioner's need to pursue removal-related relief from this Court will be obviated. And if Petitioner's motion to reopen is denied, he may appeal the decision and seek a stay of removal with the BIA. *See* 8 C.F.R. §§ 1003.1(b)(3), 1003.6(b), 1003.38(a).

Finally, the foregoing analysis also shows that Petitioner's claims for removal-related relief are no longer ripe. This provides an alternative basis for concluding that subject matter jurisdiction is absent. *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (citation omitted); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138-39 (9th Cir. 2000) (en banc) ("[I]n many cases, ripeness coincides squarely with standing's injury in fact prong.").

Accordingly, Grounds One and Two of the Amended Petition (Doc. 13) will be dismissed, the temporary stay of removal entered on December 4, 2018 (Doc. 6) will be lifted, and the Amended Motion (Doc. 14) will be denied to the extent it seeks any removal-related relief.[6]

### B. Ground Three

In Ground Three of the Amended Petition, Petitioner claims that "his release was suddenly revoked without any opportunity to challenge his detention." (Doc. 13 ¶ 71.) "ICE ha[d] not contacted Petitioner for approximately twelve (12) years, but then abruptly detained Petitioner in a move to deport him without sufficient notice in violation of their own notice to Petitioner." (Doc. 13 at 13.) This claim, construed liberally, challenges the constitutional adequacy of the procedures employed by Respondents in revoking his release and detaining him and is therefore cognizable on habeas corpus review. *See Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007); *Walters v. Reno,* 145 F.3d 1032, 1048 (9th Cir. 1998) (collateral challenge to constitutionally deficient notice was not barred under 8 U.S.C. § 1252(g)).

---

[6] Also, in light of Petitioner's submission of an Amended Motion, his November 30, 2018 Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2) will be denied as moot.

The Court also has habeas jurisdiction over Petitioner's claim that his prolonged detention, without an opportunity to receive an individualized determination as to whether his continued detention is justified, is not authorized by statute and violates the Constitution. *See Zadvydas v. Davis*, 533 U.S. 678, 678-79 (2001) ("Section 2241 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention"); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 946 (9th Cir. 2008) ("Aliens may … bring collateral legal challenges to the Attorney General's detention authority - such as in this case - through a petition for habeas corpus").

Respondents will be called to answer Ground Three of the Amended Petition and respond to the Amended Motion to the extent Petitioner challenges his continued detention.

**IT IS ORDERED:**

(1) The Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2) is **denied as moot**.

(2) Grounds One and Two of the Amended Petition (Doc. 13) are **dismissed**.

(3) The temporary stay of removal issued by this Court on December 4, 2018 (Doc. 6) is **lifted.**

(4) The Amended Motion for Preliminary Injunction (Doc. 14) is **denied** to the extent it seeks removal-related relief.

(5) Respondents shall have **30 days** from the date of this Order to file an Answer to Ground Three of the Amended Petition (Doc. 13).[7] Respondents shall not file a dispositive motion in place of an Answer without first showing cause as to why an answer is inadequate.

(6) Petitioner shall have **15 days** from the filing of Respondents' Answer to file a Reply.

---

[7] Regarding courtesy copies of documents for chambers, Respondent is directed to review Section II(D) of the Court's Electronic Case Filing Administrative Policies and Procedures Manual, which requires that "a courtesy copy of the filing, referencing the specific document number, shall be printed directly from CM/ECF." CM/ECF Admin. Man. § II(D)(3) (emphasis added). *See* http://www.azd.uscourts.gov/sites/default/files/documents/adm%20manual.pdf.

(7) Respondents shall have **30 days** from the date of this Order to file a Response to the Amended Motion (Doc. 14) as it relates to Petitioner's detention claims.

(8) Petitioner shall have **15 days** from the filing of Respondents' Response to file a Reply.

Dated this 19th day of December, 2018.

_____
Dominic W. Lanza
United States District Judge